Barr & Hettermann vs. Henderson.

---

No. 13,768.

BARR & HETTERMANN vs. W. K. HENDERSON.

SYLLABUS.

1. Testimony is admissible under the general denial, the tendency of which is to disprove plaintiffs' averments.

2. The capacity of defendant's mill was not as great as plaintiffs allege. The timber for the mill was obtained with difficulty during the low stage of the water; in consequence the cut of the mill which plaintiffs bought was not as great as plaintiffs expected. They did not put defendant in default and did not object to the slow operation of the mill until late in the year, when its operation was not longer to be expected, owing to the necessity for making repairs.

3. The defendant bound himself by the terms of the contract with the plaintiffs to deliver to the latter lumber of one inch in thickness. Plaintiffs agreed to take the entire cut of the mill. The entire cut included all the grades except mill culls.

4. Only a fractional portion of the lumber was of thickness required by the contract. The percentage of inferior grades was much larger than the terms of the contract cover. Defendant was not, in matter of the execution of this contract, in a position to compel plaintiffs, as he undertook to do, to take all the lumber on his lumber yard. It was not, taken as a whole, of the required quality and measurement.

5. The profit which plaintiffs would have made, if the lumber required by the contract had been delivered, is the damages due, besides the amount which the plaintiffs had advanced to the defendant on the contract.

A PPEAL from the First Judicial District, Parish of Caddo—
*Land, J.*

*Whitfield Jack* and *Alexander & Wilkinson* for Plaintiffs, Appellees.

*Wise & Herndon* for Defendant, Appellant.

The opinion of the court was delivered by

BREAUX, J.    Plaintiffs seek to recover an amount claimed as having been paid by them to defendant in accordance with a contract, and they also seek to recover damages growing out of the alleged violation of the contract.

It appears that defendant, by the contract in question, bound himself to sell to plaintiff the output of his mill for one year.    He also obliged himself to run his mill to its full capacity, subject to unavoidable delays and accidents, and to saw cotton-wood lumber exclusively. The defendant agreed with plaintiffs to saw all lumber to such width and thickness as they would order and of such weight as to be of full measurement when 'dry.

The plaintiffs, on their part, obligated themselves to pay nine dollars and fifty cents per thousand for the lumber (not including mill culls), five dollars of the amount at the end of each month for the lumber cut and in the stack, and the remainder of the price on delivery on barge.

Plaintiffs set forth that they advanced ten thousand four hundred and forty-seven 67-100 dollars to defendant on the lumber.    They also claim the sum of ten thousand four hundred and forty-five dollars asserted loss of profit on the lumber, and they aver that they lost forty thousand dollars arising from the defendant's failure to run the mill to its full capacity, and set up a demand in a large sum for punitory damages.    The defendant pleaded a general denial and he specially avers that he has always been willing to comply with his contract and he further claims an amount due him, so he alleges, on his contract.

The judge of the District Court, in a carefully prepared opinion, held that plaintiff is entitled to the first amount above mentioned, and in addition rendered judgment in favor of plaintiff for the sum of twenty-five hundred and twenty-six 71-100 dollars.    From this judgment defendant prosecutes this appeal.    Plaintiffs join in the appeal and ask that the judgment be amended so as to grant the whole amount alleged in their petition as due.    They also ask for interest from the

dates of payment on the moneys advanced to defendant, and, lastly, to have certain rights reserved.

The testimony of plaintiffs sustain their demand for the difference between the total amount of advanced payments made by them and the amount of credit to which the defendant is entitled on the lumber shipped out to meet advance payments, *i. e.*, ten thousand four hundred and forty-seven 67-100 dollars.

This, at once, brings us to a consideration of the second item claimed by the plaintiffs arising from the asserted loss of profits caused, plaintiffs aver, by failure to run the mill to its full capacity, also to a consideration of the item claimed by plaintiffs for exemplary or punitory damages.

For the purpose of refuting the charge that he had wantonly failed to run his mill to the full capacity, defendant offered to prove that the waters of Red River, for some time, had been low, and that log floating down that stream had become extremely slow and difficult. Plaintiffs objected, on the ground that the testimony was not admissible without averments specially setting out the cause that had prevented the mill from running to its full capacity; that matters of defense must be specially pleaded in avoidance or extinguishment of an obligation. We think that the testimony was properly admitted under the general denial. It shows circumstances which relieve the delay in running the mill from the accusation of its having been intentional. It was testimony of reasonable necessity for closing down and stopping operation of the mill. Elliot vs. Steamboat James Robb, 12 Ann. 12.

This rule of practice finds support in Budreaux vs. Tucker, 10 Ann. 8, in which the court held, as shown by a correct head note of the text, that "special allegations in the answer are not necessary to authorize the introduction of evidence, the direct tendency of which is to disprove what the plaintiff alleges." The aim was to refute plaintiffs' allegations of wrong intended by the defendant and was admissible under the authorities cited. The supply of the raw material for running the mill was directly connected with its running operations. The unavoidable delay in obtaining the logs to saw, accounted for the stoppages of the mill.

The testimony objected to, but admitted under the court's ruling, sustains defendant's averments that the floating of logs down the Red River, owing to the low stage of the water, was attended with difficulties. The rafts came down slowly, taking weeks instead of days

when the water was not so low as it was. The other means of trans-porting logs, *i. e.,* by railroad, were not in the contemplation of the parties when the contract was signed and it does not appear to have been reasonably feasible.

True, the output of the mill in the twelve months was small in the number of feet cut, but it does not appear that plaintiffs at any time ever placed the defendant in default by a formal demand. The work moved on slowly enough, but without any serious objection for quite a time, after which time, necessary repairs were made, rendering it im-possible to run the mill. Besides, the weight of the testimony sustains the idea that the mill capacity was not nearly so great as plaintiffs contend it was.

Taking all the facts sustained by the testimony into account, we are convinced that plaintiffs have no cause of complaint, on the ground that the mill's output for the year should have been larger, and that, in consequence, their profits would have been greater than they were The view heretofore expressed relieves the defendant of the charge of having delayed running operations to the end of injuring plaintiffs and of purposely failing in the execution of his contract.

We pass to the consideration of another asserted violation of the contract. This brings us to the gist of the complaint before us for decision. It involves the interpretation of the clauses of the contract, one that plaintiffs were to receive all the cotton-wood lumber cut (mill culls excepted), and the clause following, that the lumber was to be of the widths and thickness ordered. Availing themselves of the last clause, plaintiffs ordered lumber to be cut one inch in thickness. Defendant substantially admits that he did not direct his employees to comply with the instruction of plaintiffs in this respect. Only a frac-tional portion of the lumber was of that thickness. Much of this lumber was mis-sawn or badly sawn. But, defendant, in this connec-tion, urges that plaintiffs are obliged under the terms of the contract to take all the lumber the mill sawed, except the mill culls; that all badly sawn or mis-sawn lumber is classed as culls, and was to be con-sidered as part of the mill's cut, which plaintiffs intended to buy. In our view, this contention is not borne out by the contract. Plaintiffs having ordered inch lumber, had a right to lumber of that thickness. They had frequently complained of the way the lumber was being sawed. The testimony shows that the lumber was badly cut. Plaintiffs, by the terms of the contract, had some right to some uniformity of

measurement. It should have been made to appear in order to bind plaintiffs that this lumber was cut with some regard to the measurement ordered.

The first witness who testified, an inspector of lumber for many years, said:

"Q.—You say you 'never saw such lumber'—what kind of lumber was it; was it good lumber?

"A.—It was good for nothing, that is the kind it was. About fifty per cent. we could not accept. I have never seen such a bad lot of lumber in my life."

Another witness, the fourth in the order in which the witnesses were examined, was equally as emphatic on the subject. All the witnesses for the plaintiffs agreed in the statement (there was a number for plaintiff and defendant) that the percentage of mis-cut lumber was extraordinarily large. Their testimony sustains the averment that it was not well manufactured lumber. Witnesses for the defendant evidently thought that, as a whole, it could have been planed or sawed so as to make it a merchantable article.

Be all this as it will, we have not found that, by the terms of the contract, defendant was in a position to insist upon the plaintiffs taking "all the lumber on the yard or none at all," as we understand was his order to his foreman, as shown by the weight of the testimony. Plaintiffs had bound themselves to take inch lumber and all the grades, except mill culls, that would be cut while sawing the lumber of the measurement just stated. The percentage of other grades was larger than it should have been. Much the larger percentage should have been of inch boards. It was not.

Mis-cut and badly sawn lumber had been delivered by defendant to plaintiffs before the difference arose between them, at the full price within the terms of the contract. These inferior grades were taken at half price. This, to some extent, shows the interpretation which the parties gave to the contract. In our view, defendant, being bound primarily to make inch lumber, could not compel plaintiffs to accept all lumber without regard to uniformity of measurement set forth in the contract. Defendant did not comply with the terms of the contract and, in consequence, plaintiffs are entitled to have it decreed dissolved. Plaintiffs are entitled to damages to the extent that there was non-performance.

At the date suit was brought for the dissolution of the contract, it

appears that there were two million and eighty-nine thousand feet of lumber on the yard to which plaintiffs were entitled, and which should have been delivered as required by the contract. Witnesses have fixed the net profit which plaintiffs would have made at one dollar and twenty-one cents per thousand feet. We have given consideration to the error plaintiffs aver was made by a member of the firm in testifying regarding net profits. We, nonetheless, think that the estimate made heretofore should stand as being a correct estimate as made evident by other testimony in the record. Plaintiffs ask that the judgment be amended so as to reserve to them the right to recover of defendant in a subsequent suit, whatever amount they may have to pay for their default arising from defendant's failure to deliver the lumber as per contract. Plaintiffs have the right to recover upon any claim to which they are entitled that is not covered by the terms of this decision, without reservation.

For the reasons assigned, the judgment appealed from is affirmed.

PROVOSTY, J., takes no part.